IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| JUSTON WALTRIP, ET AL. | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Civil No. _____ |
| | § | |
| PILOT TRAVEL CENTERS, LLC, and PILOT CORPORATION | § | CLASS ACTION COMPLAINT |
| | § | |
| *Defendants.* | § | |

## CLASS ACTION COMPLAINT

Plaintiffs Juston Waltrip, Jonathan Winckler, Sergio Olivas, Melvin Sanchez, Nathaniel Cooley, Candelario Cordero-Jaime, Jeremiah Heisey, Daniel Madrid, Javier Martinez, Manuel Moreno, Andres Rocha, and McKannin Young (collectively the "Named Plaintiffs") file this Class Action Complaint against Pilot Travel Centers, LLC ("Pilot Travel Centers") and Pilot Corporation (collectively, "Defendants" or "Pilot") on behalf of themselves and all others similarly-situated.

## NATURE OF ACTION

1. Defendants violated the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101-2109 (the "WARN Act") by terminating the Named Plaintiffs and the putative class members without providing sufficient advance written notice as required by the WARN Act. WARN Act liability is imputed to Defendants under the "single employer" test.

2. This action seeks to recover back pay and benefits under the WARN Act to redress a common course of conduct by Defendants which resulted in the termination of hundreds of employees as part of a series of mass layoffs without proper legal notice.

3. Defendants' mass layoffs deprived the Named Plaintiffs and the Putative Class Members "…and their families [of] some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market." 20 C.F.R. § 639.1(a).

4. Defendants failed to provide the Named Plaintiffs and the Putative Class Members with the sixty (60) days advance written notice that is required by the WARN Act.

5. Under the "unforeseeable business circumstance" exception of the WARN Act, "[a]n employer may order a plant closing or mass layoff before the conclusion of the 60-day period if the closing or mass layoff is caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required." 29 U.S.C. § 2102(b)(2)(A).

6. Even assuming that exception could apply, Defendants were still mandated by the WARN Act to give the Named Plaintiffs and the Putative Class Members "as much notice as is practicable." They failed to do so here, giving the Named Plaintiffs no advance written notice of their termination.

7. The crucial date under the WARN Act is not the date when the company knows that a mass layoff is imminent, nor is it the date when the company finally gets around to identifying the exact employees affected by the mass layoff. Rather, the WARN Act states plainly that the relevant time is the date when a mass layoff is "reasonably foreseeable."

8. As soon as it is probable that a mass layoff will occur, the employer must provide notice as soon as is practicable. Here, upon information and belief, Pilot likely knew near the end of March that a mass layoff was "reasonably foreseeable."

9. As more fully explored below, the Defendants are part of a sophisticated, integrated, and interrelated oil refining and retail gas company which, at all material times, was centrally controlled by a common set of officers, directors, and managers.

10. Defendant Pilot Corporation exerts centralized management and operational control of the Defendants' businesses, where it exerts direct control over its subsidiary operations, including Pilot Travel Centers, LLC.

11. Defendants operated as a "single employer" for purposes of the WARN Act at all material times hereto, including with respect to the coordinated decision to terminate the Named Plaintiffs and Putative Class Members by engaging in mass layoffs.

12. Indeed, Defendant Pilot Corporation maintained a key role in Defendants' strategic, financial, human resources and benefits functions, and exercised control over Defendants' business plans and decisions, including the ultimate decision to terminate employees across the nation through mass layoffs.

13. Defendant Pilot Corporation was also responsible for the decision not to provide the Named Plaintiffs with any advance written notice as required by the WARN Act.

14. The Named Plaintiffs seek to impose "single employer" liability against each Defendant in accordance with 20 C.F.R. § 639.3(a)(2).

## JURISDICTION AND VENUE

15. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1367 and 29 U.S.C. §§ 2102, 2104(a)(5).

16. This Court has subject matter jurisdiction over the class action portion of this complaint pursuant to 28 U.S.C. § 1332(d) because (1) this case involves over 150 class members;

(2) the class members total claims exceed $5,000,000.00 in the aggregate, exclusive of costs or interest; and (3) at least one class member is from a different state than Defendants.

17.     Venue in this District is proper under 28 U.S.C. §1391(b) and (c), and § 2104 of the WARN Act, 29 U.S.C. § 2104(a)(5) and a substantial part of the events giving rise to the claim occurred in this District.

## THE PARTIES AND THE LAYOFFS

18.     Plaintiff Juston Waltrip is an individual residing in Roswell, New Mexico, Plaintiff Jonathan Winckler is an individual residing in Roswell, New Mexico, Plaintiff Sergio Olivas is an individual residing in Roswell, New Mexico, Plaintiff Melvin Sanchez is an individual residing in Artesia, New Mexico, Plaintiff Nathaniel Cooley is an individual residing in Lake Arthur, New Mexico, Plaintiff Candelario Cordero-Jaime is an individual residing in Roswell, New Mexico, Plaintiff Jeremiah Heisey is an individual residing in Roswell, New Mexico, Plaintiff Daniel Madrid is an individual residing in Artesia, New Mexico, Plaintiff Javier Martinez is an individual residing in Shallow Water, Texas, Plaintiff Manuel Moreno is an individual residing in Canutillo, Texas, Plaintiff Andres Rocha is an individual residing in Clint, Texas, and Plaintiff McKannin Young is an individual residing in Simsboro, Louisiana.

19.     The Named Plaintiffs were truck drivers hauling crude oil and based at the Pilot Travel Centers yards primarily in Carlsbad, New Mexico (the "Carlsbad Yard") and Artesia, New Mexico (the "Artesia Yard").

20.     The specific entity listed on their paychecks is "Pilot Travel Centers, LLC." Defendant, Pilot Travel Centers, LLC is a foreign limited liability company with its principal place of business at 5508 Lonas Drive, Knoxville, TN 37909. Defendant does business throughout the

United States, including New Mexico. Defendant can be served with process by serving its New Mexico registered agent, CT Corporation System, at 206 S Coronado Ave, Espanola, NM 87532.

21. However, the Named Plaintiffs were terminated by Defendant Pilot Travel Centers, LLC and Defendant Pilot Corporation working with each other in tandem. Pilot Corporation is a foreign corporation with its principal place of business at 5508 Lonas Drive, Knoxville, TN 37909. Pilot Corporation does business throughout the United States, including New Mexico. Defendant can be served with process by serving its New Mexico registered agent, CT Corporation System, at 206 S Coronado Ave, Espanola, NM 87532.

22. Specifically, in March of 2020, Defendants closed the Carlsbad Yard, and laid off all of the drivers employed at that location. None of the drivers based at the Carlsbad Yard received any advance written notice of their termination.

23. On or about July 1, 2020, Defendants closed the Artesia Yard, and laid off all of the drivers employed at that location. None of the drivers based at the Artesia Yard received any advance written notice of their termination.

24. Both the closings at the Artesia Yard and the Carlsbad Yard were "plant closings" because they were events that constituted the "permanent or temporary shutdown" of one "or more facilities or operating units within a single site of employment," and, both events lead to the loss of employment for at least 50 employees "during any 30 day period." 29 U.S.C. § 2101(a)(2).

25. Both plant closings affected drivers like the Named Plaintiffs at other physical locations but in close geographic proximity, used for the same purposes, and sharing the same staff and equipment as the drivers at the Artesia Yard, the Carlsbad Yard, the Lovington Yard, the Pecos Yard and the Midland Yard, making them the same "site of employment" for purposes of

calculating the requisite layoffs to constitute a "plant closing." *See* 20 C.F.R. § 639.3; 29 U.S.C. § 2101(a)(2).

26.     Specifically, all of the above-mentioned yards made up 'Region 23.' At the time of the layoffs, the acting Regional Supervisor of Region 23 was Jason Williams. Region 23 shared management staff, drivers, and equipment, who worked and were utilized across the yards interchangeably for the exact same business purpose – hauling crude oil. For example, all major repairs performed on any vehicle operating at the Region 23 site of employment were conducted at the Lovington Yard.

27.     All drivers in Region 23 were laid off in connection with the plant closings occurring when each of the yards closed. Upon information and belief, Defendants laid off all of the drivers at the Artesia Yard, the Carlsbad Yard, the Lovington Yard, the Pecos Yard and the Midland Yard, without giving any of them written notice. Each of these yard closures is individually a "plant closing," as it represents the closure of a facility or operating unit within a single site of employment. The closure of Region 23 as a whole is likewise a "plant closing" as it is the closure of a single site of employment.

28.     Drivers like the Named Plaintiffs were also part of a "mass layoff" within the meaning of the WARN Act, causing layoffs at least 33 percent of the employees at the site of employment and at least 50 employees during a 30-day period. 29 U.S.C. § 2101(a)(3).

29.     Alternatively, employment losses for two or more groups of Pilot drivers at a single site of employment in the aggregate exceeded fifty layoffs and occurred within a 90-day period. The employment losses were not the result of separate and distinct actions and causes and were an attempt by the employer to evade the requirements of this chapter.
29 U.S.C.A. § 2102(d).

## JOINT EMPLOYER STATUS

30. Each Defendant employed 100 or more employees, as required for coverage under the WARN Act. More importantly, the three Defendants constitute a "single employer" for purposes of WARN Act Liability.

31. Two or more affiliated businesses which constitute a "single employer" may be held jointly and severally liable for violations of the WARN Act.

32. The Department of Labor ("DOL") regulations issued under the WARN Act provide that two or more affiliated businesses may be considered a single business enterprise for WARN Act purposes. 20 C.F.R. § 639.3(a)(2).

33. The regulations provide a five-factor test to assess whether affiliated businesses constitute a "single employer," which would subject them to joint liability under the WARN Act.

34. The five DOL factors are as follows: (1) common ownership, (2) common directors and/or officers, (3) unity of personnel policies emanating from a common source, (4) dependency of operations, and (5) de facto exercise of control. 20 C.F.R. § 639.3(a)(2). Defendants easily satisfy this test.

*Common Ownership*

35. Defendant Pilot Corporation is the majority member of Pilot Travel Centers, LLC. Thus, the Defendants have common ownership. https://www.cspdailynews.com/mergers-acquisitions/berkshire-hathaway-invests-pilot-flying-j; accessed July 13, 2021.

36. Pilot Travel Centers, LLC operates vehicles under the "Pilot" brand name.

37. The Named Plaintiffs and putative class members are former employees who worked at various Pilot yards and locations and locations through the country, including here in New Mexico, in Texas, and throughout the country.

*Common Directors and/or Officers*

38. Besides common ownership, Defendants each have common directors and officers. In fact, the Pilot website identifies the very same executives for both Pilot Corporation and Pilot Travel Centers. *See* https://www.pilotcompany.com/leadership, last accessed July 13, 2021.

39. For example, the Pilot Corporation CEO Shameek Konar's profile states that the Pilot Corporation he leads "supplies more than 11 billion gallons of fuel per year and has an industry-leading network of more than 1,000 fueling locations." https://www.pilotcompany.com/leadership/shameek-konar, last accessed July 13, 2021.

40. Pilot Corporation's website makes this claim despite the fact that Pilot Travel Centers operates the vast majority of Pilot retail locations and oversees the transportation and hauling of the vast majority of crude oil under the Pilot brand. https://pilotflyingj.com/history/, last accessed June 1, 2021 (Pilot's executive team's is responsible for the "company's growth from 1.1 billion fuel gallons sold in 1996 to more than 7 billion sold annually today….The company operates the fourth-largest tanker fleet in the nation, with more than 1,000 trucks that travel more than 120 million miles per year delivering more than 8 billion gallons of fuel.").

41. In fact, the entire C-suite for both Pilot Corporation and Pilot Travel Centers are identical. https://www.pilotcompany.com/leadership, last accessed July 13, 2021; https://pilotflyingj.com/executive-leadership/, last accessed July 13, 2021.

*Unity of Personnel Policies Emanating From a Common Source*

42. Having the same leadership, including the same Chief People Officer, Chief Operator, and Senior Vice President of Petroleum Supply and Distribution, Defendants as a matter of necessity made personnel policies in unison, including the failure to comply with the WARN Act.

*Interdependency of Operations and Control*

43. Defendant Pilot Corporation is largely dependent on its subsidiaries, including Pilot Travel Centers, LLC to generate revenue because it does not operate outside of Tennessee. For the vast majority of Pilot's nationwide business operations, activities are carried out only by its subsidiary Pilot Travel Centers, LLC.

44. In return, Defendant Pilot Corporation supplies administrative services and support to Pilot Travel Centers, LLC.

45. Defendants depend on each other for revenue, customers, employees, benefits, administrative, and executive-level support. They are, in fact, a single employer as defined by the WARN Act, 20 C.F.R. § 639.3(a)(2).

## CLASS ACTION ALLEGATIONS

46. The Named Plaintiffs and the other Class members were employees of Defendants who were terminated without cause as part of or as the reasonably expected consequence of a mass layoff and/or plant closures.

47. Defendants failed to give the Named Plaintiffs and the putative class members as much advance written notice as practicable under the circumstances.

48. In violation of the WARN Act, Defendants failed to provide as much written notice as was practicable under the circumstance surrounding the COVID-19 pandemic.

49. Defendants' failure to provide its employees with sufficient advance written notice had a devastating economic impact on the Named Plaintiffs and the putative class members.

50. As a consequence, the Named Plaintiffs and the putative class members are entitled under the WARN Act to recover from the Defendants their respective compensation and benefits for 60 days, no part of which has been paid.

51.     Specifically, the Named Plaintiffs seek to certify the following national class:

**WARN Act National Class:**

All former Pilot employees throughout United States who were not given a minimum of 60 days' written notice of termination and whose employment was terminated between March 2020 and July 2020 as a result of a "mass layoff" or "plant closing" as defined by the Workers Adjustment and Retraining Notification Act of 1988.

52.     In the alternative, and as a sub-class, the Named Plaintiffs seek to have certified:

**WARN Act New Mexico and Texas Sub-Class:**

All former Pilot employees throughout New Mexico and Texas who were not given a minimum of 60 days' written notice of termination and whose employment was terminated between March 2020 and July 2020 as a result of a "mass layoff" or "plant closing" as defined by the Workers Adjustment and Retraining Notification Act of 1988.

53.     The members of these classes are so numerous that joinder of all members is impracticable. Upon information and belief, there are more than 100 members of the Region 23 Class.

54.     The Named Plaintiffs and the class members were all laid off by Defendants without any notice. The Named Plaintiffs' claims are therefore typical of the claims of the class members.

55.     The Named Plaintiffs will fairly and adequately represent and protect the interests of the class members because there is no conflict between the claims of the Named Plaintiffs and those of the class members. The Named Plaintiffs' counsel is competent and experienced in litigating employment class actions and other complex litigation matters.

56.     There are questions of law and fact common to the proposed classes, which predominate over any questions affecting only individual members, including, without limitation:

    a.     whether Defendants have violated the WARN act by laying off the Class Members without providing them any advance notice; and

      b.      The proper measure of damages sustained by the Class Members.

57. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(2).

58. The Named Plaintiffs' claims are typical of the claims of the classes in the following ways, without limitation: (a) The Named Plaintiffs are members of the classes; (b) the Named Plaintiffs' claims are based on the same policies, practices and course of conduct that form the basis of the claims of the classes; (c) the Named Plaintiffs' claims are based on the same legal and remedial theories as those of the classes and involve similar factual circumstances; (d) there are no conflicts between the interests of the Named Plaintiffs and the class members; and (e) the injuries suffered by the Named Plaintiffs are similar to the injuries suffered by the class members.

59. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because questions of law and fact common to the class members predominate over any questions affecting only individual class members.

60. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.

61. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy because—in the context of wage and hour litigation— individuals lack the financial resources to vigorously prosecute lawsuits against large corporations.

62. The class members are readily identifiable from Defendants' own records, including the records indicating where class members were driving and consequently, where the majority of their hours were logged. Prosecution of separate actions by individual members of the class would create the risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendants.

63. Class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Further, the amounts at stake for many of the class members, while substantial, are not great enough to enable them each to maintain separate suits against Defendants.

64. Without a class action, Defendants will retain the benefit of its wrongdoing, which will result in further damages to the Named Plaintiffs and the class members. The Named Plaintiffs do not envision any difficulty in the management of this action as a class action.

65. The Named Plaintiffs intend to send notice to the Region 23 Class Members to the extent required by Federal Rule of Civil Procedure 23(c).

## VIOLATIONS OF THE WARN ACT

66. At all relevant times, Defendants each employed 100 or more employees, exclusive of part-time employees, *i.e.,* those employees who had worked fewer than 6 of the 12 months prior to the date notice was required to be given or who had worked fewer than an average of 20 hours per week during the 90 day period prior to the date notice was required to be given (the "part-time employees"), and each employed 100 or more employees who in the aggregate worked at least 4,000 hours per week exclusive of hours of overtime within the United States.

67. The terminations of the Named Plaintiffs resulted in the loss of employment for at least 50 employees, excluding part-time employees, at each of 'site of employment' where the Named Plaintiffs worked.

68. The terminations of the employment of persons who worked at each 'site of employment,' or as the reasonably foreseeable consequence of those terminations, resulted in the loss of employment for at least 33% of the facilities' respective employees, excluding part-time employees.

69. The Named Plaintiffs and the putative class members were discharged without cause on their part.

70. The Named Plaintiffs and the putative class members experienced an employment loss as part of, or as the reasonably expected consequence of, the mass layoffs which occurred between March and July 2020.

71. Prior to their terminations, the Named Plaintiffs and the putative class members did not receive written notice at least 60 days in advance of the termination of their employment, nor did they receive as much notice as practicable under the circumstances.

## JURY DEMAND

72. The Named Plaintiffs request a trial by jury.

## PRAYER

73. For these reasons, the Named Plaintiffs on an individual basis and on a representative basis on behalf of the putative class members respectfully requests that judgment be entered in their favor and against Defendants, awarding the Named Plaintiffs on an individual basis and on a representative basis on behalf of the Class Members the following relief:

a. for an Order certifying the WARN Act claim as Class Action pursuant to FED. R. CIV. P. 23, for designation of the Named Plaintiffs as Class Representatives and for designation of the Named Plaintiff's counsel as class counsel;

b. for an Order awarding the Named Plaintiffs and the Class Members the sum of: (a) wages, salary, commissions, bonuses, accrued pay for vacation and personal days, for 60 days; (b) pension, 401(k) contributions, health and medical insurance and other fringe benefits for 60 days; and (c) medical expenses incurred during the 60 day period following their respective terminations that would have been covered and paid under the Defendants' health insurance plans had coverage under that plan continued for such period, all determined in accordance with the WARN Act, 29 U.S.C. § 2104 (a)(1)(A);

c. for all costs and attorneys' fees incurred prosecuting this claim, as allowed by the WARN Act, 29 U.S.C. § 2104 (a)(6).

d. interest allowed by law; and

e. any other and further relief to which the Named Plaintiffs and the Class Members may be entitled.

Respectfully submitted,

*/s/ Benjamin W. Allen*
Benjamin W. Allen
NM Federal Bar No. 21-37
Wallace & Allen, LLP
440 Louisiana, Suite 1500
Houston, Texas 77002
Telephone: (713) 224-1744
Facsimile: (713) 227-0104
ballen@wallaceallen.com

**COUNSEL FOR PLAINTIFFS**