## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JUSTON WALTRIP, NATHANIEL COOLEY,
CANDELARIO CORDERO-JAIME,
JEREMIAH HEISEY, DANIEL MADRID,
JAVIER MARTINEZ, MANUEL MORENO,
SERGIO OLIVAS, MELVIN SANCHEZ,
ANDRES ROCHA, MCKANNIN YOUNG,
AND JONATHAN WINCKLER,

      **Plaintiffs,**

**v.**                             **Case No.: 21-cv-0643 SMV/KRS**

**PILOT TRAVEL CENTERS, LLC**
**and PILOT CORPORATION,**

      **Defendants.**

### <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court on Defendants' Motion to Compel Arbitration, Motion to Enforce Class Action Waiver, and Motion to Dismiss. [Doc. 24]. The Court will grant Defendants' Motion to Compel Arbitration as well as Defendants' Motion to Enforce Class Action Waiver. The Court will deny Defendants' Motion to Dismiss and stay this action pending completion of arbitration. Plaintiffs' oral Motion for Leave to file a Sur-Reply and Motion for Jury Trial on Arbitrability [Doc. 51] will be denied.

### BACKGROUND

The Worker Adjustment Retraining Notification Act (the "WARN Act") requires most employers with 100 or more employees to provide notification 60 days in advance of plant closings. 29 U.S.C. §§ 2101–109 (2018). Plaintiffs are truck drivers who transported oil within the

State of New Mexico for Defendant Pilot Travel Centers, LLC. They allege that Defendants failed to provide sufficient advance written notice before terminating their employment as required by the WARN Act. [Doc. 1]. They also seek certification as a class under Federal Rule of Civil Procedure 23. *Id.*

When Plaintiffs applied for employment with Defendants, they executed Mediation and Arbitration Agreements (the "MAAs") which provided for mandatory arbitration of all disputes arising out of their employment. The MAAs contained class action waivers. Defendants ask the Court to compel arbitration and enforce the class action waivers [Doc. 24]. Finally, Defendants request dismissal of Plaintiffs' claims once they are referred to arbitration. *Id.*

## DISCUSSION

Section 2 of the Federal Arbitration Act (the "FAA" or the "Act") provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "This provision reflects 'a liberal federal policy favoring arbitration agreements,' and creates 'a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.'" *BOSC, Inc. v. Bd. of Cnty. Comm'rs of Cnty. of Bernalillo*, 853 F.3d 1165, 1170 (10th Cir. 2017) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition" a district court "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. "But before the Act's heavy hand in favor of arbitration swings into play, the parties themselves must *agree* to have their disputes arbitrated." *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 977 (10th Cir. 2014).

Courts evaluate whether the parties agreed to arbitrate in two steps. The Court must first assess "whether [the agreement at issue] constitutes a valid agreement to arbitrate" and then "whether the asserted dispute falls within the scope of the arbitration clause." *Soc'y of Pro. Eng'g Emps. in Aerospace, Int'l Fed'n of Pro. & Tech. Emps., Loc. 2001 v. Spirit Aerosystems, Inc.*, 681 F. App'x 717, 721 (10th Cir. 2017) (unpublished) (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010)). The first question "must always be decided by a court . . . ." *Fedor v. United Healthcare, Inc.*, 976 F.3d 1100, 1105 (10th Cir. 2020). The second question must also be decided by a court *unless* the arbitration agreement includes a clause that clearly and unmistakably delegates it to the arbitrator. *Dish Network L.L.C. v. Ray*, 900 F.3d 1240, 1244 (10th Cir. 2018).

## I.   The MAAs are Valid Agreements to Arbitrate.

On a motion to compel arbitration, the moving party "bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement; if it does so, the burden shifts to the nonmoving party to raise a genuine dispute of material fact regarding the existence of an agreement." *Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 612 (10th Cir. 2014) (unpublished). "[T]his framework is similar to summary judgment practice." *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012) (abrogated on other grounds by *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Texas*, 134 S.Ct. 568 (2013)).

Like in the summary judgment context, a party must offer admissible evidence to prove the existence of an agreement. *Clowdis v. Colorado Hi-Tec Moving & Storage, Inc.*, No. 11-CV-00036-CMA-KMT, 2011 WL 5882191, at *8 (D. Colo. Nov. 3, 2011) (unreported), *adopted*, 2012 WL 895701 (citing *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th

Cir. 1985) (only admissible evidence may be considered when ruling on a motion for summary judgment)). When considering such evidence, the Court draws all reasonable inferences in favor of the nonmoving party. *Hancock*, 701 F.3d at 1261. While a general presumption in favor of arbitration applies when interpreting an arbitration agreement, "this presumption disappears when the parties dispute the existence of a valid arbitration agreement." *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir. 2002).

A material fact is one that "might affect the outcome of the suit under governing law" and a dispute is "genuine" if 'reasonable jury could return a verdict for the nonmoving party.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Finlinson v. Millard Cty.*, 455 F. Supp. 3d 1232, 1238 (D. Utah 2020) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). However, if the nonmoving party shows that there is a genuine dispute of material fact related to the formation of an agreement to arbitrate, the Court must hold a summary trial to decide whether an agreement exists. *Bellman*, 563 F. App'x at 612. Once the facts are clear, the courts apply state-law contract principles to determine whether the parties agreed to arbitrate. *Hancock*, 701 F.3d at 1255; *Salazar v. Citadel Commc'ns Corp.*, 2004-NMSC-013, ¶ 8, 135 N.M. 447, 90 P.3d 466.

**A.  Defendants' Evidence Shows Valid Agreements to Arbitrate.**

In support of the Motion, Defendants submitted an affidavit by Defendants' records custodian, Katrice Yancey. They also proffered the MAAs and several other documents.  The MAAs take two forms, one used for Plaintiffs Cooley, Cordero-Jaime, Heisey, Madrid, Martinez,

Moreno, Rocha, Waltrip, Winckler, and Young ("MAA 1")[1] and another used for Plaintiffs Olivas

and Sanchez ("MAA 2").

MAA 1 provides, in relevant part:

> Except as otherwise provided in this Agreement, PFJ and Employee
> hereby consent to the resolution of all disputes covered by this
> Agreement in accordance with the [American Arbitration
> Association's] Rules. This Agreement applies to any dispute arising
> out of or related to Employee's employment with PFJ or termination
> of employment regardless of its date of accrual and survives after
> the employment relationship terminates.

[Doc. 24-1] at 2. On the signature page are the following statements:

> EACH PARTY TO THIS MEDIATION AND ARBITRATION
> AGREEMENT ACKNOWLEDGES CAREFULLY READING
> THIS AGREEMENT, UNDERSTANDING ITS TERMS, AND
> ENTERING INTO THIS AGREEMENT VOLUNTARILY AND
> NOT IN RELIANCE ON ANY PROMISES OR
> REPRESENTATIONS OTHER THAN THOSE CONTAINED IN
> THIS AGREEMENT ITSELF.
>
> EACH PARTY FURTHER ACKNOWLEDGES HAVING THE
> OPPORTUNITY TO DISCUSS THIS MEDIATION AND
> ARBITRATION AGREEMENT WITH PERSONAL LEGAL
> COUNSEL AND HAS USED THAT OPPORTUNITY TO THE
> EXTENT DESIRED.

*Id*. at 6. Except for Plaintiff Rocha, Plaintiffs wrote or printed their names on, or electronically

signed, the signature page of the MAAs.

MAA 1 includes a provision stating that the disputes to be arbitrated "include without

limitation disputes arising out of or relating to interpretation or application of this Agreement,

including the enforceability, revocability or validity of the Agreement or any portion of the

---

[1] MAA 1 includes two versions of the Class Action Waiver. The differences in the Class Action Waiver are immaterial
to the Court's analysis, as discussed below. References to Pilot as "PFJ" and variations in format are also immaterial.
*Compare* [Doc. 46-1] at 5 *with* [Doc 24-1] and [Doc. 24–6].

Agreement (with the exception of the Class Action Waiver described in Paragraph 8 . . . . ).” *Id*. Paragraph 8 provides, among other things discussed below, that “[d]isputes regarding the validity or enforceability of the Class Action Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator.” *Id*.

MAA 2 is substantially the same as MAA 1, except for three key differences. First, MAA 2 does not state clearly that arbitration will be subject to the American Arbitration Association’s rules.[2] [Doc. 46-1] at 35. Instead, MAA 2 states, “[T]he Arbitrator has exclusive authority to resolve any dispute relating to the applicability or enforceability of this Agreement.” [Doc. 24-2] at ¶ 17. Second, MAA 2 provides that

> [a]ny Claim [as defined in MAA 2] shall be filed no later than one (1) year from the date the Claim should have reasonably been discovered or one (1) year from the last date of employment, whichever comes first. Employee agrees to waive its right to file any claims which Employee fails to file within the above stated time period.

*Id*. at 3. Third, MAA 2 does not address class or collective actions.

Defendants also submitted three other types of documents to show that Plaintiffs agreed to arbitrate their disputes. These documents are (1) applications for employment with Pilot signed by Plaintiffs (the “Applications”), (2) Plaintiffs’ acknowledgments of the Pilot Employee Handbook (the “Acknowledgements”), and (3) “Driver Qualification Checklists” used by Pilot employees to track documents signed and submitted by new employees (the “Checklists”).

---

[2] MAA 2 includes a statement that “[a]rbitrations conducted pursuant to this Agreement shall be conducted in accordance with the procedures set forth in the Rules for Arbitration (the ‘Rules’), except where the Rules conflict with this Agreement, in which case the terms of this Agreement shall govern,” but the phrase “Rules for Arbitration” is not defined in MAA 2. *See* [Doc. 24-2] at ¶¶ 1, 2, 5, 11.

The online Applications submitted by 10 Plaintiffs[3] include a statement that the applicant agreed "**that [he] will be required as a condition of employment to agree to Pilot Flying J's dispute resolution procedure, including binding arbitration, to resolve any and all claims related to my employment, except as provided in a labor agreement or by law**." [Doc. 24] Exs. E3, F3, I3, J3, K3, L3, M3, N3, O3, P3. The paper Applications submitted by the other two Plaintiffs[4] did not include a statement about arbitration of disputes as a condition of employment. *Id*. Exs. G3, H3.

The Acknowledgment states: "For all Team Members/Drivers hired on or after[5] January 1, 2012, employment is subject to and contingent upon the signing of the mandatory arbitration agreement presented to you and signed when you completed your new hire paperwork." [Doc. 24-3] at 1. Almost all Plaintiffs signed the MAA and Acknowledgement on the same date. Others signed the Acknowledgement on or within a day of their hire date.

Defendants' employees used the Checklists to track completion of new employee paperwork, testing, and certifications. Ms. Yancey stated that

> It was Pilot's regular practice to create and maintain the Driver Qualification Checklist to track which documents were signed by employees during the onboarding process. It was Pilot's regular practice to make a check mark next to each listed document after the document was presented to the employee, reviewed and signed by the employee, and returned to Pilot. These records confirm that each document listed and checked off was signed by the respective employee.

---

[3] Plaintiffs Cooley, Cordero-Jaime, Heisey, Madrid, Martinez, Moreno, Rocha, Waltrip, Winckler, and Young.
[4] Plaintiffs Olivas and Sanchez.
[5] The Acknowledgement signed by Plaintiffs Olivas and Sanchez differs only in that it states, "For all Team Members/Drivers hired on *or about* January 1, 2012 . . . ." [Doc. 24-3] at 2 (emphasis added).

[Doc. 46-1] at 1. The authenticated Checklists indicate that Defendants received signed Applications, MAAs, and Acknowledgements from Cordero-Jaime, Heisey, Madrid, Martinez, Olivas, Sanchez, Waltrip, and Winckler.[6]

Plaintiffs argue that Defendants have failed to meet their burden because the MAAs and other documents are inadmissible. First, they contend that the documents are inadmissible hearsay. [Doc. 35] at 11. Second, they argue that, because Pilot's practice was to keep the signature pages but discard the remainder of the MAA after it was signed, there is no evidence that the submitted MAAs are the same MAAs that Plaintiffs signed.[7] The Court disagrees with both arguments.

The MAAs are not hearsay because they are offered only to show the existence of an agreement to arbitrate. In other words, their "significance . . . lies solely in the fact that [the statement] was made . . . ." Fed. R. Evid. 801 Advisory Committee's Note. "The admission of a contract to prove the operative fact of that contract's existence . . . cannot be the subject of a valid hearsay objection." *Castaneda v. Volt Mgmt. Corp.*, No. EP-19-CV-00338-FM, 2020 WL 2308699, at *3 (W.D. Tex. May 8, 2020) (holding that a copy of an arbitration agreement offered to show the existence of an agreement was not hearsay). *Echo Acceptance Corp. v. Household Retail Servs., Inc.*, 267 F.3d 1068, 1087 (10th Cir. 2001) (stating that if the out-of-court statement "affects the legal rights of the parties, or where the legal consequences flow from the fact that the words were said[,]" the statement is not hearsay).

Similarly, the Applications and Acknowledgements are not hearsay because they are offered to show that Plaintiffs were on notice that arbitration was a condition of employment.

---

[6] Defendants did not submit Checklists for Cooley and Young. In addition, Ms. Yancey did not authenticate the Checklists submitted for Moreno and Rocha.
[7] This argument was raised at oral argument rather than in the Response.

"Statements offered for the effect on the listener . . . are generally not hearsay." *Faulkner v. Super Valu Stores, Inc.,* 3 F.3d 1419, 1434 (10th Cir. 1993); *see Corbin v. Affiliated Comput. Servs., Inc.*, No. 6:13-CV-180-ORL-36, 2013 WL 3804862, at *7 (M.D. Fla. July 19, 2013) (holding that an email sent to the plaintiff was not hearsay because was offered only to show that the plaintiff received notice of the defendant's dispute resolution procedures, not for the truth of the matter). In contrast, the Checklist is hearsay because it is a statement by Defendants' staff offered to prove the truth of the matter asserted in the Checklist, i.e., that Plaintiffs signed the documents recorded on the Checklists. *See Rosales v. Coca-Cola Sw. Beverages LLC*, No. EP-18-CV-361-PRM, 2019 WL 1493359, at *3 (W.D. Tex. Apr. 3, 2019) (unreported) (holding that a printout documenting that the plaintiff signed an arbitration agreement was hearsay).

Even if all the proffered documents are hearsay, they are nonetheless admissible as business records. "The business records exception to the hearsay rule permits admission of a business record as evidence of the truth of the matter stated if it [1] was made at or about the time of the event [2] by a person with knowledge and [3] was made and kept in the course of a regularly conducted business activity." *Fed. Deposit Ins. Corp. v. Staudinger*, 797 F.2d 908, 910 (10th Cir. 1986); Fed. R. Evid. 803(6). In her affidavit, Ms. Yancey stated that she has "personal knowledge of Pilot's policies and procedures regarding the" Application, Acknowledgement, MAAs, and the Checklist, as well as the "onboarding process[,]" and that she "can attest to the accuracy of employment records." [Doc. 46-1] at 1. Ms. Yancey stated that she had reviewed the documents attached to the Motion and Reply, and that they are true and correct "copies of the documents they purport to be, and as they are labeled and described in Pilot's Motion." [Doc. 46-1] at 1–2; *see* Fed. R. Evid. 901(a), (b). Ms. Yancey also stated that that the documents attached

to the Motion and Reply "are maintained by personnel or staff of Pilot, or persons acting under their control, and are prepared in the regular course of business, at or about the time of the act, condition, or event recorded." Finally, Ms. Yancey stated that "as a condition of employment for all Pilot employees, Pilot offers and requires all employees to agree to mutual arbitration of all disputes regarding the employment relationship." [Doc. 46-1] at 2, 3. This evidence is sufficient to show that the documents are business records.

Ms. Yancey also stated that "[i]t was Pilot's regular practice to present the [MAAs] to employees as complete documents for review and signature as part of the onboarding process [and] to retain only the signature pages of these agreement[s], after employees reviewed, signed, and returned them to Pilot." *Id*. at 2. Plaintiffs argue that Ms. Yancey's affidavit is insufficient because she was not present when the MAAs were signed and, therefore, has no personal knowledge of whether the MAAs attached to the Motion and Reply are the same MAAs presented to Plaintiffs for signature. This argument is unpersuasive.

Ms. Yancey's affidavit is evidence of Pilot's standard practices "offered to support an inference about what happened when the individual Plaintiffs" were hired and is "based on personal knowledge of the standard practice followed" during onboarding. *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1264 (10th Cir. 2012) (discussing admission of evidence of routine practice). She testified that she had reviewed Pilot's records and that the MAAs attached to the Motion and Reply are "are true and correct copies of the complete [MAAs] *as presented to* Plaintiffs." [Doc. 46-1] at 2, 3 (emphasis added). Since Ms. Yancey stated that all but the signature page was discarded, the Court understands Ms. Yancey's testimony to be that the MAAs submitted by Defendants are consistent with the MAAs in use at the time that Plaintiffs were hired. Personal

observation of Plaintiffs' signing the MAAs is not required for Ms. Yancey to testify about these matters. *Ernest v. Lockheed Martin Corp.*, No. CIV.A.07-CV02038-WYDKLM, 2008 WL 2958964, at *7 (D. Colo. July 29, 2008) (rejecting the argument that an arbitration agreement was inadmissible "because [the d]efendant's records custodian did not personally observe [the p]laintiff sign the document . . . . "); *cf. Cejka v. Vectrus Sys. Corp.*, 823 F. App'x 591, 604 (10th Cir. 2020) (unreported) (stating "there is no requirement that the party offering a business record produce the author of the item" (quoting *Staudinger*, 797 F.2d at 910)).

The Court finds that the documents attached to the Motion and Reply are admissible as business records, and further finds that the signed MAAs and other documents, together with the Yancey Affidavit and Checklists, are prima facie evidence that Plaintiffs agreed to arbitrate all claims falling within the MAAs. *See Walker v. Dillard's, Inc.*, No. CV 17-657 MV/KK, 2019 WL 1283001, at *3 (D.N.M. Mar. 20, 2019) (holding that a signed arbitration agreement together with evidence that all employees were required to sign the agreement was prima facie evidence of an agreement); *Levine v. Vitamin Cottage Nat. Food Markets, Inc.*, No. 20-CV-00261-STV, 2021 WL 4439800, at *6 (D. Colo. Sept. 27, 2021) ("Courts regularly accept evidence of a company's regular practices as evidence that an employee signed an agreement as part of employment onboarding or other standard procedure.").

## B.  Plaintiffs' Evidence Does Not Demonstrate a Genuine Dispute of Material Fact.

All Plaintiffs except Young submitted declarations stating that they did not agree to arbitrate their disputes with Pilot. Because he did not submit a declaration, Plaintiff Young has not shown a genuine question of material fact precluding an order to arbitrate his dispute. *See Levine*, 2021 WL 4439800, at *7 ("Where the Court has no evidence to suggest that an[] . . . individual[]

contest[s] the authenticity of the agreements, no issue of material fact is apparent."). The Court will address the arguments common to the remaining Plaintiffs first, then the arguments specific to certain plaintiffs.

In their declarations, Plaintiffs assert that they do not remember the MAA, the Acknowledgement, their Applications, or the contents of those documents, and that they "did not know about entering into" an agreement to arbitrate.[8] [Doc. 35] at 6. These statements do not raise a genuine dispute of material fact regarding the existence of an agreement to arbitrate.

Plaintiffs' "lack of memory about the form is entitled to little weight in determining whether they actually signed it." *Cross v. United States*, 149 F.3d 1190 (10th Cir. 1998) (unpublished). Courts considering similar assertions have held that a failure to recall signing an agreement is not enough to raise a genuine dispute over whether an agreement exists. *See, e.g.*, *Martinez v. Capstone Rest. Grp., LLC*, No. 20-CV-1017-WJM-MEH, 2021 WL 1723776, at *3 (D. Colo. Mar. 31, 2021) (stating that the "[p]laintiff's failure to recall executing the arbitration agreement does not raise a genuine dispute of material fact as to the existence of the agreement"); *Beattie v. TTEC Healthcare Sols., Inc.*, No. 1:18-CV-01574-RM-SKC, 2019 WL 2189481, at *2 (D. Colo. May 21, 2019) (stating that "[g]eneral denials and statements that a user does not recall visiting a website or agreeing to arbitrate are insufficient to defeat arbitration" (quoting *Petrie v. GoSmith, Inc.*, 360 F. Supp. 3d 1159, 1162 (D. Colo. 2019)).

Similarly, Plaintiffs' assertions that they did not understand the import of the MAA do not raise a genuine issue. The MAAs are stand-alone documents not incorporated into any other

---

[8] Plaintiffs also assert that they were not afforded time to consult with an attorney. This assertion goes to whether the MAAs are unenforceable because they are procedurally unconscionable, which is addressed below. In addition, Plaintiffs' assertions that they do not recall seeing the Checklist are immaterial because the Checklist is a mechanism internal to Pilot for tracking onboarding documents.

document. They are titled "MEDIATION AND ARBITRATION AGREEMENT" and include statements on the signature page that repeat that title in capital letters. "It is a fundamental tenet of New Mexico contract law 'that each party to a contract has a duty to read and familiarize himself with the contents of the contract, each party generally is presumed to know the terms of the agreement, and each is ordinarily bound thereby.'" *Griffin v. Vivint Solar, Inc.*, No. 1:21-CV-00138-KWR-LF, 2021 WL 2186408, at *5 (D.N.M. May 28, 2021) (quoting *Ballard v. Chavez*, 1994-NMSC-007, ¶ 8,  117 N.M. 1,  868 P.2d 646).  From the date they submitted their Applications, Plaintiffs were on notice that an arbitration agreement would be a condition of employment, and there is no evidence that the terms of the MAAs were withheld from Plaintiffs or that Defendants prevented Plaintiffs from reviewing the MAAs on request. Finally, it is clear from the statements above the signature line that the MAA terms appeared on preceding pages. *See Trevino v. Acosta, Inc.*, No. 17-CV-06529 NC, 2018 WL 3537885, at *7 (N.D. Cal. July 23, 2018) (holding that a plaintiff's lack of understanding of an arbitration agreement did not create an issue of fact where the agreement was clearly labeled, and the plaintiff manifested his assent to it with an electronic signature); *cf. Murken v. Deutsche Morgan Grenfell, Inc.*, 2006-NMSA-080, ¶ 27,  140 N.M. 68,  139 P.3d 864  (finding no facts supporting fraud in the execution of an arbitration agreement where the second page, which the plaintiff signed, gave the plaintiff notice of the agreement to arbitrate even if he did not see the first page of the agreement).

    In addition to the foregoing general assertions, Plaintiffs Winckler, Heisey, Madrid, Martinez, and Rocha state that they did not sign MAA 1 or agree to arbitrate their disputes with Defendants. [Doc. 46] at Exs. 3, 8–10, 12. The fact that Plaintiffs do not recall the MAAs at all undermines their assertions that they did not sign the MAAs. *See Ernest*, 2008 WL 2958964, at *6

(holding that the plaintiff's denial that he had signed an arbitration agreement did not raise a genuine issue of fact where the plaintiff did not deny signing other onboarding documents presented on the same date). More importantly, at oral argument, Plaintiffs' counsel clarified that Plaintiffs Winckler, Heisey, Madrid, and Martinez[9] do not deny that their signatures or other marks appear on MAA 1. Rather, they deny that they "executed" the MAAs. [Tr. 14, ln. 9 to 15, ln. 15]. The Court understands these Plaintiffs to be arguing that they did not accept or assent to the terms of MAA 1, despite having signed it. *Cf. Seva Resorts, Inc. v. Hodel*, 675 F. Supp. 1542, 1548 (D. Ariz. 1987) ("The common law meaning of 'execute' is to perform all the necessary formalities required to give validity to a document, including signing."). This contract formation issue is addressed next.

## C.  The Parties Formed an Agreement to Arbitrate under New Mexico Law.

Because Plaintiffs have not shown a genuine issue of fact, the Court considers whether the parties formed an agreement to arbitrate under New Mexico law. *See Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 475 (10th Cir. 2006). Contract formation requires "the existence of an offer, an acceptance, consideration, and mutual assent." *Piano v. Premier Distrib. Co.*, 2005-NMCA-018, ¶ 6, 137 N.M. 57, 107 P.3d 11. Plaintiffs do not dispute that there was an offer and consideration for the agreement to arbitrate. Instead, they contend that there was no acceptance of or mutual assent to the MAAs because there was no "meeting of the minds." [Doc. 35] at 13.

"A party's acceptance of a written offer may be express or implied by conduct." *Cornoyer v. AT&T Mobility Servs., LLC*, No. CIV 15-0474 JB/WPL, 2016 WL 6404853, at *11 (D.N.M.

---

[9] Plaintiffs' counsel stated that there was a question of fact regarding whether Rocha electronically signed the MAA. As discussed below, a signature is not required to form an agreement to arbitrate. Hence, whether Rocha signed the MAA is not dispositive of whether he agreed to arbitrate disputes with Defendants.

Oct. 5, 2016); *Medina v. Sunstate Realty, Inc.*, 1995-NMSC-002, ¶ 14, 889 P.2d 171; *see Bellman*, 563 F. App'x at 614 (stating that the FAA does not require that an arbitration agreement be signed); 9 U.S.C. § 2. Express acceptance of the MAAs is shown by most Plaintiffs' signatures or marks on the signature pages. *See Griffin*, 2021 WL 2186408, at *5 (finding acceptance and assent under New Mexico law where the plaintiffs signed the agreement but argued that they did not review the entire agreement or understand its terms).

Moreover, acceptance and mutual assent may be shown by a party's conduct where the party knew that her conduct could constitute acceptance and assent. *DeArmond v. Halliburton Energy Servs., Inc.*, 2003-NMCA-148, ¶¶ 11, 20, 134 N.M. 630, 81 P.3d 573 ("Where the offer invites acceptance through performance, rather than in writing, the beginning of invited performance is an implied acceptance."). Here, Plaintiffs signed either the Acknowledgement or a version of the Application that included notice of the arbitration requirement, or both. Those documents state that agreement to the MAA is a condition of employment by Pilot, putting Plaintiffs on notice that Pilot would not hire them without their assent to the MAA. *See id.* ¶ 19 (discussing cases in which a plaintiff was on notice of arbitration provisions and accepted their terms by continuing to work). By signing those documents, then accepting employment with Pilot, Plaintiffs assented to arbitration. *See Drasal v. Pilot Traveling Centers, LLC*, No. 2:19-CV-00981 KWR/CG, 2020 WL 1158551, at *3 (D.N.M. Mar. 10, 2020) (stating that the plaintiff "was on notice that his employment was contingent on accepting the mandatory arbitration agreement, and by continuing to work for [Pilot], he manifested assent to the arbitration agreement").

**II.  The Arbitrator Must Decide Issues of Arbitrability and Enforceability.**

The second part of the Court's analysis considers whether the parties' dispute must be arbitrated under the MAAs. *Soc'y of Pro. Eng'g Emps. in Aerospace,* 681 F. App'x at 721 (stating that the second step assesses "whether the asserted dispute falls within the scope of the arbitration clause"). Before the Court may address that issue, it must first determine whether it was delegated to the arbitrator.

"[P]arties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (quoting *Rent-A-Center, W., Inc. v. Jackson,* 561 U.S. 63, 67 (2010)). "Arbitrability" means "whether the parties agreed to arbitrate the merits" of their dispute. *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 942 (1995). Questions of enforceability of an arbitration agreement, such as unconscionability, may also be delegated to the arbitrator by agreement of the parties. *Rent-A-Ctr.*, 561 U.S. at 68 (holding that an unchallenged provision stating that the arbitrator "shall have exclusive authority to resolve any dispute relating to the . . . enforceability . . . of th[e a]greement" delegated the issue of unconscionability of the agreement to the arbitrator (ellipses in original)).

Delegation of such issues to the arbitrator must be clear and unmistakable. *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83 (2002). Delegation may be accomplished by express language or by referencing the AAA Rules on the arbitrator's powers in an arbitration agreement. *Dish Network L.L.C.*, 900 F.3d at 1246; *Felts v. CLK Mgmt., Inc.*, 2011-NMCA-062, ¶ 25, 149 N.M. 681, 254 P.3d 124 (holding that reference to a rule providing that the arbitrator "shall have

the power to rule on all . . . questions of arbitrability" clearly and unmistakably delegated arbitrability to the arbitrator).

Plaintiffs argue that the MAAs do not include a "clear and unmistakable" delegation of arbitrability to the arbitrator. [Doc. 35] at 16–17. Alternatively, they argue that any delegation provisions in the MAAs are unconscionable. [Tr. 24–36]. The Court addresses these arguments in turn.

**A.  The MAAs Include Clear and Unmistakable Delegation Provisions.**

Contrary to Plaintiffs' assertion, the MAAs clearly delegate arbitrability to the arbitrator. MAA 1 states that, "[e]xcept as otherwise provided in [the MAA], [Pilot] and Employee hereby consent to the resolution of all disputes covered by [the MAA] in accordance with the [American Arbitration Association ("AAA")] Rules." [Doc. 24-1] at 1. Incorporation of the AAA rules— which provide that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement"—is clear and unmistakable evidence that the parties agreed to delegate those issues to the arbitrator. *Dish Network L.L.C.*, 900 F.3d at 1245 (considering the same AAA rule at issue here and holding that it, together with broad language like that in MAA 1, showed a clear and unmistakable intent to delegate arbitrability to the arbitrator); *see Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1283 (10th Cir. 2017) (holding that incorporation of a substantively identical rule showed that the parties "clearly and unmistakably intended for an arbitrator to decide issues of arbitrability").

Moreover, both MAA 1 and MAA 2 include other provisions addressing whether the arbitrator should decide questions of arbitrability. Section 2 of MAA 1 provides that the disputes

to be arbitrated include "without limitation[,] disputes arising out of or relating to *interpretation or application of this Agreement, including the enforceability, revocability or validity* of the Agreement or any portion of the Agreement (with the exception of the Class Action Waiver . . . .)" [Doc. 24-1] at 2 (emphasis added). Many other courts have concluded that this language shows the parties' intent to delegate arbitrability to the arbitrator. *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016) (holding that this language clearly and unmistakably delegated the issue of arbitrability to the arbitrator); *Rimel v. Uber Techs., Inc.*, 246 F. Supp. 3d 1317, 1328 (M.D. Fla. 2017) (same); *Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507, 522 (E.D.N.Y. 2017) (same); *Carey v. Uber Techs., Inc.*, No. 1:16-CV-1058, 2017 WL 1133936, at *5 (N.D. Ohio Mar. 27, 2017) (same); *Lamour v. Uber Techs., Inc.*, No. 1:16-CIV-21449, 2017 WL 878712, at *13 (S.D. Fla. Mar. 1, 2017) ("Every court to consider this delegation clause has held it as 'clear and unmistakable' evidence that the parties agreed to submit disputes between the parties to arbitration."), *report and recommendation adopted,* No. 16-21449-CIV, 2017 WL 11631486 (S.D. Fla. Aug. 28, 2017). The Court agrees with the reasoning in these cases.

MAA 2 provides, "[T]he Arbitrator has exclusive authority to resolve any dispute relating to the *applicability or enforceability* of this Agreement." [Doc. 24-2] at ¶ 17 (emphasis added). This language clearly and unmistakably delegates those issues to the arbitrator. *See Artis v. Lyon Shipyard, Inc.*, No. 2:17CV595, 2018 WL 2013073, at *2 (E.D. Va. Apr. 26, 2018) (considering the same language and holding that it was a clear and unmistakable delegation); *James v. Client Servs., Inc.*, No. 14-2480-JAR, 2015 WL 3649473, at *5 (D. Kan. June 11, 2015) (same); *Zachary v. Countrywide Fin. Corp.*, No. CV H-08-0214, 2008 WL 11490471, at *3 (S.D. Tex. Oct. 7,

2008), *report and recommendation adopted,* No. CV H-08-0214, 2008 WL 11490468 (S.D. Tex. Nov. 9, 2008) (same);.

Plaintiffs cite two cases in which the courts held that there was no clear and unmistakable delegation provision. The language at issue in those cases is substantially different from the language in the MAAs. *See Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 780 (10th Cir. 1998) (considering the phrase "any and all disputes arising out of or relating to" the contract); *Perez v. Qwest Corp.*, 883 F. Supp. 2d 1095, 1117 (D.N.M. 2012) (considering language stating that the arbitrator would decide any disputes between the employee and employer, "including, but not limited to, disputes relating to the interpretation of this A[greement]"). Both MAAs state that the arbitrator must decide the applicability and enforceability of the MAAs. Hence, *Perez* and *Riley* are inapposite.

## B.  The Delegation Provisions are Not Unconscionable.

Plaintiffs next assert that the delegation provisions in MAA 1 and MAA 2 are procedurally unconscionable because the parties had unequal bargaining positions and the MAAs were offered on a "take it or leave it" basis. They also argue that the delegation provision in MAA 1 is substantively unconscionable because it requires the Court, rather than an arbitrator, to decide whether the Class Action Waiver applies and can be enforced.[10] [Tr. 24–36]. Plaintiffs argue that the MAA 1 delegation provision unfairly favors Defendants.

"'When determining whether a contract is procedurally unconscionable, the Court . . . considers whether the contract is one of adhesion: 'a standardized contract offered by a transacting party with superior bargaining strength to a weaker party on a take-it-or-leave-it basis,

---

[10] This argument was raised at oral argument rather than in the Response.

without opportunity for bargaining.'" *THI of New Mexico at Hobbs Ctr., LLC v. Spradlin*, 893 F. Supp. 2d 1172, 1184–85 (D.N.M. 2012) (quoting *Rivera v. Am. Gen. Fin. Servs., Inc.,* 150 N.M. 398, 259 P.3d 803, 816 (2011)), *aff'd,* 532 F. App'x 813 (10th Cir. 2013). Adhesion contracts are not per se unconscionable. *Padilla v. State Farm Mut. Auto. Ins. Co.*, 2003-NMSC-011, ¶ 14, n.3, 668 P.3d 901. However, "an adhesion contract is procedurally unconscionable and unenforceable 'when the terms are patently unfair to the weaker party.'" *State ex rel. King v. B & B Inv. Grp., Inc.*, 2014-NMSC-024, ¶ 27, 329 P.3d 658 (quoting *Rivera,* 2011-NMSC-033, ¶ 44). "Grossly unfair" or unreasonably one-sided terms may also render an arbitration agreement substantively unconscionable. *Peavy by Peavy v. Skilled Healthcare Grp., Inc.*, 2020-NMSC-010, ¶ 12, 470 P.3d 218. The New Mexico Supreme Court recently clarified that "[a] one-sided arbitration agreement is not substantively unconscionable merely by way of its one-sidedness. Rather, our substantive unconscionability law requires a determination that the one-sidedness of an arbitration agreement is unfair and unreasonable." *Id.* ¶ 13. In New Mexico, "the presence of both [procedural and substantive] unconscionability increases the likelihood of a court invalidating the agreement, [but] there is no requirement that both forms be present." *Id.* ¶ 11.

Viewing the evidence in the light most favorable to Plaintiffs, the MAAs are adhesion contracts: the MAAs were prepared by Defendants, agreement to the MAAs was a condition of employment, and the Plaintiffs were provided little, if any, time or opportunity for bargaining. *See Kepas v. eBay*, 412 F. App'x 40, 46 (10th Cir. 2010) (unpublished) (holding that an agreement was an adhesion contract where it was drafted by "eBay, the party with superior bargaining power [and] eBay required that [the plaintiff] complete the agreement at the end of his probationary period, and the express language of the agreement condition[ed the plaintiff's] continued employment on his

acceptance of its terms"); *Tatum v. ProBuild Co. LLC*, No. CV 12-01060 LH/LFG, 2013 WL 12329840, at *7 (D.N.M. July 17, 2013) (finding an adhesion contract where an arbitration agreement was offered on a "take it or leave it" basis and was a condition of employment).

In assessing adhesion contracts, the Court must determine whether the inequality in bargaining power was "so gross that the party's choice was rendered effectively non-existent before concluding that the contract was procedurally unconscionable." *Hunt v. Rio at Rust Ctr., LLC*, 2021-NMCA-043, ¶ 24, 495 P.3d 634; *Adams v. Merrill Lynch, Pierce, Fenner & Smith*, 888 F.2d 696, 701 (10th Cir. 1989) ("The mere fact that the contracts which the [plaintiffs] signed were form or boilerplate contracts required by [the defendant] prior to entering the business relationship, is not sufficient" to show that the arbitration agreements are unconscionable.). This analysis includes "the extent to which [Plaintiffs] were free to accept or decline terms of the agreement, as well as the use of high[-]pressure tactics and the relative scarcity of the subject matter of the contract." *Hunt*, 2021-NMCA-043, ¶ 24.[11] In *Hunt*, for example, the arbitration agreement was procedurally unconscionable because the plaintiff had an "urgent need" for rehabilitative hospital services, there were no openings at other facilities, and plaintiffs had only 15 minutes in which to review and sign a 30-page agreement. *Id.* ¶¶ 25, 28. Here, there is no evidence that Plaintiffs could not seek employment elsewhere or that Pilot pressured Plaintiffs to sign the MAAs and accept positions with Pilot. In most cases, Plaintiffs were notified that consent to arbitrate was a condition

---

[11] Although Plaintiffs state that they did not understand the MAAs, Plaintiffs did not assert any facts indicating language or other barriers to understanding the MAAs. *See Hunt*, 2021-NMCA-043, ¶ 20 (addressing the parties' ability to understand contract terms in the context of procedural unconscionability).

of employment when they completed their Applications at least a day before signing the MAA. Plaintiffs have not shown that their choice was virtually non-existent.

Plaintiffs also maintain that the MAA 1[12] delegation provision is unfair because it reserves the issue of whether the Class Action Waiver is enforceable for the Court, whereas almost all other disputes are delegated to the arbitrator. In addition to the language in the delegation provision excepting the enforceability of the Class Action Waiver from the arbitrator's authority, the Class Action Waiver provides that only the Court may determine whether the Class Action Waiver is valid and enforceable. Plaintiffs argue that this "carve out" unfairly favors Defendants because Defendants are more likely than Plaintiffs to seek to enforce the Class Action Waiver.

The delegation provision is not unfairly one-sided. Whether Plaintiffs may bring their claims as a class affects both parties. Moreover, class action waivers in arbitration agreements are presumptively valid, and arbitration agreements, even those that limit access to class or collective action proceedings, should be "rigorously enforced." *Am. Exp. Co. v. Italian Colors Rest.*, 133 S.Ct. 2304, 2309 (2013).[13] Because the Class Action Waiver in MAA 1 is presumptively enforceable, Plaintiffs have a significant interest, perhaps greater than Defendants', in litigating that issue in court. At minimum, both parties have a significant interest in the Class Action Waiver's enforceability; the MAA 1 delegation provision gives both parties the right to judicial determination of that issue. *See Dalton v. Santander Consumer USA, Inc.*, 2016-NMSC-035, ¶ 21, 385 P.3d 619 (stating that "allowing both parties in this case complete access to small claims

---

[12] MAA 2 does not include a class action waiver or require that a court determine whether class or collective actions are barred by MAA 2. Hence, Plaintiffs' substantive unconscionability argument does not apply to MAA 2.

[13] *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621–32 (2018) (stating that "an argument that a contract is unenforceable *just because it requires bilateral arbitration* is . . . is one that impermissibly disfavors arbitration whether it sounds in illegality or unconscionability"); *Vitrano v. N.A.R., Inc.*, No. 18-CV-06754-KAM-RLM, 2020 WL 1493620, at *9 (E.D.N.Y. Mar. 27, 2020) ("Class action waivers . . . are valid and enforceable.").

proceedings, even if one party is substantially more likely to bring small claims actions, is [not] at all unfair"); *Rivera v. Uniqlo California, LLC*, No. LACV-17-02848-JAK-JPRX, 2017 WL 6539016, at *14 (C.D. Cal. Sept. 8, 2017) (unreported) (stating that "[t]he enforceability of the class action waiver affects both parties" and holding that a provision in the delegation clause that required a court to determine the applicability and enforceability of a class action waiver did not render the delegation provision unconscionable); *Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 53 (E.D.N.Y. 2017) (stating that a "provision requiring that a court decide 'disputes relating to the interpretation or application of [a c]lass [a]ction [w]aiver' . . .does not negate a finding of clear and unmistakable delegation to the arbitrator to decide whether the parties entered a valid arbitration agreement and whether the present dispute falls within the scope of the arbitration agreement"); *Saizhang Guan v. Uber Techs., Inc.*, 236 F. Supp. 3d 711, 728 (E.D.N.Y. 2017) (same).

The Court finds and concludes that the circumstances surrounding execution of the MAAs do not rise to procedural unconscionability. In addition, the MAA 1 delegation provision is not unreasonably one-sided in favor of Defendants or patently unfair. Hence, MAA 1's delegation provision is neither procedurally nor substantively unconscionable. Because Plaintiffs' argument regarding the unfairness of the delegation provisions is based on the Class Action Waiver, which does not appear in MAA 2, Plaintiffs have not shown that MAA 2 is patently unfair in its terms. The Court will enforce both delegation provisions and refer any remaining arguments addressing arbitrability[14] and the enforceability and validity of the MAAs to the arbitrator.

---

[14] The parties dispute whether the claims by Olivas and Sanchez are barred by MAA 2's provision barring claims filed after one year from the last date of employment. [Doc. 24-2] at 3. Plaintiffs assert that provision is unenforceable because it prevents Olivas and Sanchez from vindicating a statutory right under the WARN Act. This arbitrability issue is delegated to the arbitrator by the delegation provision in MAA 2. *See De Angelis v. Icon Ent. Grp. Inc.*, 364

### III. Plaintiffs Must Proceed Individually.

MAA 1 includes a "Class Action Waiver" in two versions. The first version provides:

> Both PFJ and You agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative basis. There will be no right or authority for any dispute to be brought, heard or arbitrated as a class, collective, representative or private attorney general action, or as a member in any purported class, collective, representative or private attorney general proceeding, including without limitation pending but not certified class actions . . . .

[Doc. 24-1] at 3–4. The second version provides:

> The parties agree to arbitrate solely on an individual basis, and that this agreement does not permit class arbitration or any claims brought as a plaintiff or class member in any class or representative arbitration proceeding, . . . including without limitation pending but not certified class actions . . . . The arbitral tribunal may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding.

[Doc. 24-36] at 2; [Doc. 40] at 2; [Doc. 44] at 2. Like the delegation provisions discussed above, both Class Action Waivers provide that disputes over the validity or enforceability of the Class Action Waivers must be decided by the Court.[15]

Plaintiffs state that "[a]lthough th[e] Response focuses on why the cases brought by Plaintiffs are not arbitrable, the state court defenses raised and argued in this response apply with equal force to the C[lass] Action Waiver[s]." [Doc. 35] at 1, n.1. The Court understands Plaintiffs

---

F. Supp. 3d 787, 795 (S.D. Ohio 2019) (stating that challenges to an arbitration agreement based on the "effective vindication" doctrine must be heard by the arbitrator when there is a valid delegation clause).

[15] The Class Action Waivers have different versions of the "carve out." One, used for Moreno, Martinez, and Rocha, states, "Notwithstanding the tribunal's power to rule on its own jurisdiction and the validity or enforceability of the agreement to arbitrate, the tribunal has no power to rule on the validity or enforceability of the agreement to arbitrate solely on an individual basis." [Doc. 24-36, -40, -44] at 2. The other, used for Cooley, Cordero-Jaime, Heisey, Madrid, Waltrip, Winckler, and Young, states, "Disputes regarding the validity or enforceability of the Class Action Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator." [Doc. 24-21] at 2; [Doc. 24-48] at 2; Doc., 46-1] at 7, 13, 19, 26, 31. Plaintiffs do not argue that there is a substantive difference between these provisions.

to be arguing that the Class Action Waivers are (1) procedurally unconscionable for the same reasons that the delegation provisions are procedurally unconscionable and (2) substantively unconscionable because they unfairly reserve the issue of enforceability to the Court. As found above, those arguments are unavailing.

To the extent Plaintiffs assert that the Class Action Waiver is unenforceable because it impinges on rights found in the WARN Act, the Court finds that Plaintiffs have not met their burden. In the FAA, "Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings." *Epic Sys. Corp.*, 138 S. Ct. at 1619. "A party seeking to suggest that [the FAA and another statute] cannot be harmonized, and that one displaces the other, bears the heavy burden of showing " 'a clearly expressed congressional intention' " that such a result should follow." *Id.* at 1624 (addressing an argument that arbitration under the FAA would deprive the plaintiffs of a right under the National Labor Relations Act). The Supreme Court has stated that it had "no qualms in enforcing a class waiver in an arbitration agreement even though the federal statute at issue . . . expressly permitted collective actions.'" *Italian Colors Rest.*, 570 U.S. at 237 (citing *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 20 (1991).

Plaintiffs stated in a footnote that "[a]rbitration agreements which purport to abridge substantive statutory rights are unenforceable," but provided no other argument on this issue. Because Plaintiffs have not shown that the Class Action Waiver is contrary to the WARN Act, the Court will enforce the Class Action Waiver in MAA 1 as to Plaintiffs Cooley, Cordero-Jaime, Heisey, Madrid, Martinez, Moreno, Rocha, Waltrip, Winckler, and Young, who must proceed individually.

MAA 2 is silent on class and collective actions. An arbitration agreement is presumed to apply to individual arbitration and consent to participate in class arbitration cannot be inferred from silence. *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416 (2019) (stating that "courts may not infer consent to participate in class arbitration" without evidence that the parties agreed to class arbitration). Hence, Plaintiffs Olivas and Sanchez also must proceed individually to arbitration.

**IV. Plaintiffs' Claims Will Be Stayed Pending Conclusion of Arbitration.**

If one party has moved for a stay of its claims pending arbitration, the Court must stay the claims, rather than dismiss them. *Adair Bus Sales, Inc. v. Blue Bird Corp.*, 25 F.3d 953, 955 (10th Cir. 1994) ("[T]he Federal Arbitration Act provides the district court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.'"); 9 U.S.C. § 3. Here, Plaintiffs requested a stay of their claims pending conclusion of arbitration. The Court will, therefore, deny Defendants' Motion to Dismiss Plaintiffs' claims.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Defendants' Motion to Compel Arbitration, Motion to Enforce Class Action Waiver, and Motion to Dismiss [Doc. 24] is granted in part and denied in part. Defendants' motion to compel arbitration is GRANTED. The request to enforce the Class Action Waiver is GRANTED. Plaintiffs must proceed to individual arbitration. Defendants' Motion to Dismiss is DENIED.

**IT IS FURTHER ORDERED** that Plaintiffs' claims are hereby STAYED pending conclusion of arbitration**.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Jury Trial on Arbitrability [Doc. 51] is DENIED.

**IT IS FURTHER ORDERED** that Plaintiffs' oral Motion for Leave to File Sur-Reply is DENIED.

**IT IS SO ORDERED.**

_____

**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**